**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                    Case No. 09-CV-10463

FOUR HUNDRED SEVENTY SEVEN (477)
FIREARMS,

    Defendants.
_____/

**OPINION AND ORDER DENYING LAW FIRM'S MOTION
FOR PRELIMINARY INJUNCTION TO ENFORCE LIEN**

A law firm, Constitutional Litigation Associates, P.C. ("CLA" or "the firm"), and its members, Cynthia Heenan and Hugh Davis, Jr., filed this motion seeking (1) a preliminary injunction to enforce a lien for unpaid attorney's fees against 123 firearms that are to be returned to Gregory Kish and Sherry Harness as a condition of the settlement of the underlying civil forfeiture action and (2) an order to show cause why an injunction should not be issued. Oral argument on the issues presented in this motion is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the motion will be denied.

**I. BACKGROUND**

In August, 2008, the federal government seized 477 firearms from the Highland Gun Barn operated by Gabriel Kish, III, and Deborah Summers. (CLA Mot. 1.) Both individuals were charged criminally (and later convicted), and the government simultaneously commenced a civil forfeiture action against the firearms seized. (*Id.*) Heenan and Davis filed appearances and claims to the firearms seized on behalf of the

following individuals: (1) Gabriel Kish, III; (2) Deborah Summers; (3) Gabriel Kish, IV; (4) Gregory Kish; (5) Geoffrey Kish; (6) Terrot Myles; (7) Sherry Harness; and (8) Betty Summers.  In time, all claimants, except for Gabriel Kish, III, were dismissed from the above-captioned matter.  (Pl.'s Resp. 1-2.)  After several delays and at the conclusion of lengthy discussions involving the parties and various family members, on August 25, 2010, the court dismissed the above-captioned matter with prejudice and incorporated a stipulated consent judgment and final order between the government and Gabriel Kish, III.  (8/25/2010 Order.)  As a part of the stipulated consent judgment, the government agreed to release 123 firearms to Gabriel Kish's children, Gregory Kish and Sherry Harness.  (Pl.'s Resp. 2.)

Five months later, on February 18, 2011, attorneys Heenan, Davis, Jr., and the Firm filed a notice of attorney's lien against the 123 firearms returned to Gregory Kish and Sherry Harness, claiming that the they were not compensated for the representation of the above-mentioned claimants in the civil forfeiture action.  (Notice of Attorney's Lien 2.)  The Firm states that on May 9, 2011, Heenan "requested that the government's counsel make [arrangements] for the firearms to be turned over" to the Firm, and the government replied that absent a court order, the government would release the firearms to Gregory Kish and Sherry Harness.  (CLA Mot. 2.)  The Firm then filed this motion for a preliminary injunction to enforce the lien on May 13, 2011.

The parties disagree about the identity of the person or persons responsible for the payment of legal fees owed to the Firm.  Gregory Kish, Sherry Harness, and Gabriel Kish, IV, stated in sworn depositions that their father, Gabriel Kish, III, was paying, in full or in part, for their legal representation.  (Pl.'s Resp. 2.)  Gregory Kish and Sherry

Harness further stated that they did not agree to pay for the representation provided by the Firm.  (Gregory Kish and Sherry Harness Resp. ¶ 5.)  The Firm contends in a footnote that "Gabe Kish IV . . . purportedly on behalf of his entire family" represented to the Firm that "Counsel would be paid before the guns were even released or at the latest, from the proceeds of the sale of the returned guns."  (CLA Reply 2 n.1.)  The Firm also attached to its motion for a preliminary injunction an invoice addressed to Gabriel Kish, IV, purporting to state that the balance due as of January 14, 2011 for legal services provided in the civil forfeiture action was $23,555.31.  (CLA Mot. Ex. 1.)  However, the invoice does not actually specify who is responsible for paying the bill, and identifies the account only as: "Kish (08-037 Forf.)."  (*Id.*)

## II.  DISCUSSION

The Firm contends that the court is required to exercise supplemental jurisdiction to resolve attorney's fee disputes related to the underlying litigation, arguing that *Kalyawongsa v. Moffett*, 105 F.3d 283 (6th Cir. 1997), imposes on district courts "an obligation to resolve" fee disputes related to the main action before the court.  (CLA Reply 3.)  The court finds, however, that the exercise of supplemental jurisdiction over fee disputes is fundamentally discretionary, and that *Kalyawongsa* cannot be read to require mandatory exercise of supplemental jurisdiction in all fee disputes.  Such a drastic declaration would stand in stark contravention of the nearly half-century of supplemental jurisdiction jurisprudence and the clear intent of Congress to incorporate judicial discretion in the codification of ancillary and pendent jurisdiction in 28 U.S.C. § 1367.  Further, *Kalyawongsa* cites approvingly and acknowledges the legal soundness of fee dispute cases in other circuits that use permissive language to describe the

3

exercise of jurisdiction, without making any effort to explain the inclusion of apparently mandatory language in its holding. The court will decline to exercise supplemental jurisdiction over the dispute.

A district court may exercise supplemental jurisdiction over state-law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, supplemental jurisdiction analysis does not end with a finding under § 1367(a) that the court has the authority to exercise jurisdiction over state-law claims. Congress's codification of the doctrines of ancillary and pendent jurisdiction intended to preserve the discretionary nature of supplemental jurisdiction. *See Kalyawongsa*, 105 F.3d at 286 ("[Section] 1367 incorporates the prior doctrines of ancillary and pendent jurisdiction and the cases interpreting and applying them."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right." (citation omitted)). As the Sixth Circuit recently observed, "[s]ection 1367 grants a district court broad discretion to decide whether to exercise jurisdiction over state-law claims." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010).

The Sixth Circuit recognized in *Kalyawongsa* that "fee disputes that are related to the main action" satisfy the same case or controversy requirement of § 1367(a). *See Kalyawongsa*, 105 F.3d at 287-88. The Firm's lien against the firearms is related to the legal services provided by the Firm to the claimants in the underlying civil forfeiture action, and therefore the court may exercise supplemental jurisdiction over a motion to enforce the lien.

4

In contrast with the discretionary nature of supplemental jurisdiction under § 1367, however, movant argues that *Kalyawongsa* imposes a requirement or duty on district courts to exercise supplemental jurisdiction over attorney's fee disputes related to the main action. (CLA Reply 3.) *Kalyawongsa* does contain language that gives the appearance that supplemental jurisdiction in fee disputes, unlike all other disputes, is not discretionary, but mandatory. *Kalyawongsa*, 105 F.3d at 287-88 ("[T]he federal court's interest in fully and fairly resolving the controversies before it requires courts to exercise supplemental jurisdiction over fee disputes that are related to the main action."). The use of "requires" in *Kalyawongsa*, however, is undercut by the fundamentally discretionary nature of supplemental jurisdiction discussed above and by *Kalyawongsa's* explicit support for the holdings in attorney's fee dispute cases in other circuits, all of which use the familiar permissive language of *Gibbs*.

In *Kalyawongsa*, the Sixth Circuit looked to and agreed with the Second, Third, Ninth, and Tenth Circuits for guidance to determine whether a district court could exercise supplemental jurisdiction in fee disputes. *Kalyawongsa*, 105 F.3d at 286-87. Each case favorably cited in *Kalyawongsa* used permissive language to describe the district court's authority to exercise supplemental jurisdiction in fee disputes. In *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251 (2d Cir. 1988), the court said that "[i]t is well settled that a federal court *may, in its discretion*, exercise ancillary jurisdiction to hear fee disputes between litigants and their attorneys when the dispute relates to the main action." *Id.* at 256 (emphasis added) (quoting *Petition of Rosenman Colin Freund Lewis & Cohen*, 600 F. Supp. 527, 531 (S.D.N.Y. 1984)) (internal quotation marks and ellipses omitted). In *Curry v. Del Priore*, 941 F. 2d 730 (9th Cir. 1991), the court

5

"recognized that fee disputes arising from litigation pending before a district court fall within that court's ancillary jurisdiction. Ancillary jurisdiction *permits* courts to adjudicate matters . . . [that] affect the court's ability either to render an efficacious judgment or to control the litigation before it." *Id.* at 731 (emphasis added). In *Jenkins v. Weinshienk*, 670 F.2d 915 (10th Cir. 1982), the Tenth Circuit noted that "[a]ncillary jurisdiction rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety. Incident to the disposition of the principal issues before it, a court *may* decide collateral matters necessary to render complete justice." *Id.* at 918 (emphasis added).

*Kalyawongsa* itself recognized the permissive theme of ancillary jurisdiction in its introduction of the discussion, noting that "other circuits have *allowed* supplemental jurisdiction over attorneys' fees disputes . . . ." *Kalyawongsa*, 105 F.3d at 286 (emphasis added). *Kalyawongsa* concluded its examination of its sister circuits' case law by finding the "reasoning of the Second, Third, Ninth, and Tenth Circuits [to be] sound." *Kalyawongsa*, 105 F.3d at 287. Such explicit adherence by the Sixth Circuit to the reasoning of the cited cases plainly suggests no significant deviation from the permissive language used by those cases. To superimpose a mandatory obligation for the adjudication of legal fee disputes—and only legal fee disputes—against several decades of law explaining the discretionary exercise of jurisdiction would constitute far more than a mere deviation; it would simply read "discretionary" out.

The facts underlying the fee dispute in *Kalyawongsa* further suggest that the Sixth Circuit did not intend to impose an absolute duty on district courts to accept supplemental jurisdiction in all cases where fee disputes relate to the main action. *Kalyawongsa* was centrally concerned with ensuring the complete resolution of the

underlying litigation and observed that "[r]esolution of related fee disputes is *often* required to provide a full and fair resolution of the litigation." *Id.* (emphasis added). The dispute at issue in *Kalyawongsa* was an instance where full and fair resolution could not be achieved unless supplemental jurisdiction was employed to determine the fee dispute.

Before the settlement of the underlying dispute in *Kalyawongsa*, the district court, in granting the plaintiffs' attorneys' motions to withdraw, granted liens against any recovery the plaintiffs may secure in the future to the withdrawing attorneys. *Id.* at 285. By granting prospective liens on plaintiffs' recovery, the district court "incorporated the fee awards into the judgment by essentially perfecting a lien," *id.* at 288, and therefore a resolution of the fee dispute was required in order to effectuate the settlement.

There is no equivalent structure in this case, and unlike *Kalyawongsa*, resolution of the fee dispute here is not required to fully resolve the underlying litigation. In fact, the civil forfeiture litigation was fully dismissed, with prejudice, following the settlement between the government and Kish, III, approximately five months before the Firm filed its notice of attorney's lien against the firearms and nearly nine months before the Firm's motion to enforce the lien was filed. (*See* 8/25/2010 Order.) *Kalyawongsa* implicitly contemplates that some fee disputes, such as the one before the court, may not affect the full resolution of the underlying action, noting that "resolution is *often* required to provide a full and fair resolution of the litigation." *Id.* at 287 (emphasis added). Mandatory resolution of all fee disputes where full resolution of the litigation can be had without adjudicating the dispute would pervert a foundational principle of supplemental jurisdiction, judicial economy. Here, resolution of the fee dispute is not

7

required to provide a full resolution because the underlying litigation was resolved with prejudice five months before the Firm filed a notice of attorney's lien.

Having determined that the exercise of supplemental jurisdiction in fee disputes remains discretionary, the court must determine whether the exercise of supplemental jurisdiction in this instance is proper. "In determining whether to exercise jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel*, 625 F.3d at 952 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). *Kalyawongsa* recognized judicial economy as the primary concern of § 1367 in the context of fee disputes. *See* Kalyawongsa, 105 F.3d at 287. In the instant matter, judicial economy counsels against the exercise of jurisdiction, and therefore, the court declines to exercise supplemental jurisdiction over the Firm's motion.

*Kalyawongsa* observed that judicial economy is often served by exercising supplemental jurisdiction over fee disputes because "a federal judge who has presided over a case is already familiar with the relevant facts and legal issues." *Id.* Here, the court is unfamiliar with the facts and legal issues attendant to the attorney's lien, and the parties dispute the relevant facts. All parties appear to agree that the Firm represented the claimants in the civil forfeiture action. However, the parties dispute who contracted with the Firm to provide legal representation and who was responsible for paying the legal fees. The Firm admits to the court that a "larger dispute" regarding who is responsible for the outstanding legal fees may exist, (CLA Reply 2 n.1), and that the "Court's understanding of how all of this came about will undoubtedly be critical to the fair resolution of whatever fee dispute exists." (*Id.* at 2-3.)

However, in order to understand "how all of this came about," this court would be required to start from scratch. The Firm contends that its claim "arises from one or more written contracts, implied contracts, or in quantum meriut." (*Id.* at 3.) Determining whether the Firm is entitled to relief on any of these grounds would involve an extensive undertaking to resolve the factual disputes. First, the court would need to determine whether a contract existed, and if so, the terms of and parties to the contract. This determination would likely require the court to order discovery or conduct an evidentiary hearing. If no contract existed between the Firm and the claimants, the court would have to decide what equitable relief the Firm is entitled to under Michigan law.

The Firm contends that "all of this is well understood by this Court" because the court presided over the civil forfeiture action and the related criminal trial. (CLA Reply 3.) *Au contraire.* While the court is familiar with the dismissed civil forfeiture action, the court is as unfamiliar with the state-law contract claim the Firm asserts as any Michigan court would be upon receiving this case. Judicial economy and comity are better served by allowing a Michigan court to make the determinations of Michigan law required to adjudicate the Firm's claim.

The motion for a preliminary injunction enforcing the Firm's attorney's lien and an order to show cause why an injunction should not be issued will be denied.

9

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Constitutional Litigation Associates, P.C., and members Heenan and Davis's motion for a preliminary injunction and for an order to show cause why an injunction should not be issued [Dkt. # 105] is DENIED.

                                              s/Robert H. Cleland
                                              ROBERT H. CLELAND
                                              UNITED STATES DISTRICT JUDGE

Dated: September 13, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 13, 2011, by electronic and/or ordinary mail.

                                              s/Lisa G. Wagner
                                              Case Manager and Deputy Clerk
                                              (313) 234-5522